IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

REGINA K. MARTINEZ,                          Case No. 6:10-cv-06007-AA
                                                  OPINION AND ORDER
          Plaintiff,

     v.

THE STATE OF OREGON, by
and through its Department
of Human Services and its
Employment Department,
MICHELLE GLENN, CLAUDIA
WILCOX, and WENDY HILL,

          Defendants.
_____

Mark R. Malco
Attorney at Law
P.O. Box 3
Seal Rock, Oregon 97376
     Attorney for plaintiff

Ellen F. Rosenblum
Attorney General
John Clinton Geil
Senior Assistant Attorney General
Department of Justice
1515 S.W. Fifth Ave., Suite 410
Portland, Oregon 97201
     Attorneys for defendants

Page 1 - OPINION AND ORDER

AIKEN, Chief Judge:

Defendants the State of Oregon (the "State"), by and through the Department of Human Services ("DHS") and the Child Care Division of the Oregon Employment Department ("OED"), Michelle Glenn, Claudia Wilcox, and Wendy Hill move for summary judgment on plaintiff Regina Martinez's claims. See Fed. R. Civ. P. 56. For the reasons set forth below, defendants' motion is granted in part and denied in part.

## BACKGROUND

In 2007, plaintiff was certified by DHS as a foster parent. Plaintiff's husband, Victor Martinez,[1] also ran a day care facility out of their house in Ontario, Oregon, which was certified by both DHS and OED.

On October 30, 2007, DHS placed minor siblings AJ and BB in foster care at plaintiff's home. On December 15, 2007, plaintiff took AJ and BB out of state so that they could celebrate Christmas with their grandmother, who lived in Idaho. On December 16, 2007, an anonymous source called DHS and reported suspected child neglect because BB did not have his prescription medication, AJ had an eye infection, and the children were dirty.

On December 18, 2007, DHS assigned caseworker Glenn to investigate the reported neglect of AJ and BB (the "Investigation"). DHS removed the children from plaintiff's foster home while the Investigation was pending. DHS also notified OED

---

[1] Mr. Martinez is not a party to this lawsuit.

Page 2 - OPINION AND ORDER

that it had initiated a child protective service assessment involving plaintiff and Mr. Martinez.

OED immediately suspended Mr. Martinez's child care center certification. As such, OED ordered Mr. Martinez to close his child care business by 5 p.m. on December 18, 2007. OED further mandated that the child care business remain closed throughout the duration of the Investigation. In addition, OED suspended plaintiff and Mr. Martinez from the Criminal History Registry.[2]

On December 19, 2007, Glenn notified plaintiff that DHS had commenced an Investigation to determine whether plaintiff neglected to provide medical care for AJ and BB. Glenn did not specifically identify the medical care that was allegedly withheld or provide plaintiff with an opportunity to respond. That same day, DHS issued notices to the parents of the children who were receiving child care from plaintiff and her husband, which stated that they were no longer certified to operate a child care facility. The parents were instructed to remove their children from the facility as soon as possible and, moreover, that payments for child care provided by plaintiff or Mr. Martinez would not be approved by the State.

On December 29, 2007, plaintiff's foster care certification expired. On January 7, 2008, DHS reminded plaintiff and Mr. Martinez that they had been put on inactive status for foster care

---

[2] Enrollment in the Criminal History Registry is a prerequisite to being employed in a child care program regulated by DHS.

referrals due to the Investigation.

On January 17, 2008, DHS concluded the Investigation and issued a "Notice of Child Protective Services Founded Disposition," which was signed by Glenn and stipulated that reasonable cause existed to believe that plaintiff and her husband neglected the children in their care. On February 29, 2008, the State's review committee reversed DHS's finding of child neglect. As a result, on April 7, 2008, the State lifted plaintiff's and Mr. Martinez's suspension from the Criminal History Registry.

Thereafter, plaintiff and her husband relocated to Newport, Oregon, and again filed for child care certification with the State. On June 16, 2008, plaintiff sent a torts claim notice letter (the "Letter") to the State, outlining the above events as the basis for her claims. On November 12, 2008, DHS denied plaintiff's application for child care certification; she appealed this decision and an administrative hearing was held on July 13, 2009, at which Glenn testified. On December 20, 2009, an administrative law judge reversed DHS's decision and granted plaintiff a license to provide child care.

On January 8, 2010, plaintiff filed a complaint in this Court. On December 7, 2010, plaintiff filed an amended complaint, alleging: (1) negligence against the State; (2) deprivations of her First, Fifth, and Fourteenth Amendment due process rights in violation of 42 U.S.C. § 1983 against Glenn, Wilcox, and Hill; (3) intentional infliction of emotional distress ("IIED") against the State; and (4) interference with business relations and prospective

advantage against the State.  Plaintiff's claims are premised on defamation of her professional reputation and loss of income from her child care business rather than any rights associated with her role as a foster parent.  Defendants move for summary judgment on all of plaintiff's claims.

## STANDARD OF REVIEW

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show "that there is no genuine dispute as to any material fact and the [moving party] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  Substantive law on an issue determines the materiality of a fact.  T.W. Elec. Servs., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987).  Whether the evidence is such that a reasonable jury could return a verdict for the nonmoving party determines the authenticity of a dispute.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The moving party has the burden of establishing the absence of a genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  If the moving party shows the absence of a genuine issue of material fact, the nonmoving party must go beyond the pleadings and identify facts which show a genuine issue for trial.  Id. at 324.

Special rules of construction apply when evaluating a summary judgment motion: (1) all reasonable doubts as to the existence of genuine issues of material fact should be resolved against the

Page 5 - OPINION AND ORDER

moving party; and (2) all inferences to be drawn from the underlying facts must be viewed in the light most favorable to the nonmoving party.  T.W. Elec., 809 F.2d at 630.

## DISCUSSION

Defendants contend that plaintiff's IIED and interference with business relations claims are barred by her failure to provide proper notice pursuant to the Oregon Torts Claims Act ("OTCA"). Defendants also assert that plaintiff's negligence and § 1983 claims are time-barred under the relevant statutes of limitations. Further, defendants argue that they are protected from suit due to Eleventh Amendment immunity, witness immunity, executive officer immunity, qualified immunity, discretionary immunity, and child abuse or neglect reporting immunity.  As such, defendants' motion is predicated on procedural barriers rather than on the substantive merits of plaintiff's claims.

Plaintiff contests the application of the statutes of limitations and the OTCA, arguing that these provisions do not bar any portion of her claims since the alleged harm was continuous. In addition, plaintiff asserts that, of the immunities raised, only discretionary immunity is relevant; moreover, plaintiff argues that defendants are not entitled to discretionary immunity because the challenged agency decision was not "'a policy judgment by a person or body with governmental discretion.'"  Pl.'s Resp. to Mot. Summ. J. 11 (quoting Mosley v. Portland Sch. Dist. No. 1J, 315 Or. 85, 92, 843 P.2d 415 (1992)).

I.   <u>Notice Under the Oregon Torts Claims Act</u>

The Oregon Constitution protects the state, including its political subdivisions, from suit unless the legislature provides a cause of action. <u>Dowers Farms v. Lake Cnty.</u>, 288 Or. 669, 679, 607 P.2d 1361 (1980) (citations omitted). The legislature enacted the OTCA in order to "abrogat[e], in part, the state's sovereign immunity." <u>Jensen v. Whitlow</u>, 334 Or. 412, 416, 51 P.3d 599 (2002); <u>Rabkin v. Or. Health Sci. Univ.</u>, 350 F.3d 967, 974 (9th Cir. 2003) (citations omitted). Accordingly, pursuant to the OTCA, "every public body is subject to action or suit for its torts and those of its officers, employees and agents acting within the scope of their employment or duties." Or. Rev. Stat. § 30.265(1).

To institute an action pursuant to the OTCA, notice of a claim must be given to a public body "within 180 days after the alleged loss or injury." Or. Rev. Stat. § 30.275(2)(b). Notice, in relevant part, is defined as a written communication from plaintiff, or a representative of plaintiff, containing a "statement that a claim for damages is or will be asserted against the public body or an officer, employee or agent of the public body [and a] description of the time, place and circumstances giving rise to the claim, so far as known to the claimant." Or. Rev. Stat. § 30.275(4). "The purpose of the notice requirement [is] to allow the public body an opportunity to investigate a matter promptly and to settle all meritorious claims without litigation." <u>Flug v. Univ. of Or.</u>, 170 Or.App. 660, 671, 13 P.3d 544 (2000), <u>aff'd</u>, 335 Or. 540, 73 P.3d 917 (2003) (citation omitted).

Page 7 - OPINION AND ORDER

It is undisputed that the State, acting by and through DHS and OED, is a public body subject to the OTCA; as such, plaintiff was required to provide notice of the events engendering her state law claims.  It is also undisputed that plaintiff sent the Letter to the State on June 16, 2008, which adequately appraised defendants of her negligence claim.  Thus, the sole issue is whether plaintiff provided sufficient notice of her IIED and interference with business relations claims in accordance with the OTCA.

The Court finds that the Letter failed to provide notice of these claims because the circumstances on which they are based occurred after June 16, 2008.  See Am. Compl. ¶¶ 31-44.  Contrary to plaintiff's assertion, the IIED and interference with business relations claims do not allege an ongoing series of wrongful actions that relate back to her other claims; instead, as plaintiff acknowledges, these claims "seek damages for subsequent conduct" and are therefore discrete.  Id. at ¶¶ 31, 44.  Specifically, plaintiff asserts that, after the Letter was sent, she "became the subject of malicious false rumors spread by State employees [and] was subjected to numerous harassing investigations by the State and its agencies."  Id. at ¶ 34.  Plaintiff's negligence claim, however, is based on defendants' failure to follow Oregon law during the Investigation.  Id. at ¶¶ 8-21.  Accordingly, because the theory of liability of plaintiff's IIED and interference with business relations claims is fundamentally different from the negligence claim, the Letter did not provide adequate notice.

Nevertheless, commencement of an action within the applicable

Page 8 - OPINION AND ORDER

time period satisfies the OTCA notice requirement.  <u>Flug</u>, 170
Or.App. at 672 n.10; <u>see also</u> Or. Rev. Stat. § 30.275(3)(c).  The
180-day notice period does "not begin to run until a plaintiff
knows or reasonably should know of the facts giving rise to [her]
claim."  <u>Jack Doe 1 v. Lake Oswego Sch. Dist.</u>, 242 Or.App. 605,
613-14, 259 P.3d 27 (2011) (citation omitted).

     Here, while her complaint does not contain a precise
chronology, it appears as though plaintiff's IIED and interference
with business relations claims accrued sometime between July 2009,
and November 2009.  As a result, this action, which was filed on
January 8, 2010, was initiated largely within the relevant time
period.  <u>See</u> Am. Compl. ¶¶ 43-44 (IIED and interference with
business relations claims were "initiated within 180 days of the
facts and circumstances giving rise to [those claims]").
Therefore, defendants' motion is granted as to plaintiff's IIED and
interference with business relations claims, but only to the extent
that these claims are based on events that took place on or before
July 12, 2009.

II. <u>Application of the Relevant Statutes of Limitations</u>

     Under Oregon law, tort claims asserted against a public body
are subject to a two year statute of limitations.  <u>See</u> Or. Rev.
Stat. § 30.275(9).  The limitations period begins to accrue on
Oregon tort claims subject to the OTCA when "plaintiff knows or
should know of (1) the injury; (2) the identity of the tortfeasor;
and (3) the cause of the injury."  <u>Jack Doe 1</u>, 242 Or.App. at 614.

     Similarly, claims made under 42 U.S.C. § 1983 are subject to

a two year statute of limitations in Oregon.  See Sain v. City of Bend, 309 F.3d 1134, 1139 (9th Cir. 2004) (citing Or. Rev. Stat. § 12.110).  The limitations period begins to accrue on a § 1983 claim when plaintiff has "a complete and present cause of action," which means "plaintiff can file suit and obtain relief."  Wallace v. Kato, 549 U.S. 384, 388, reh'g denied, 549 U.S. 136 (2007).  Thus, plaintiff's negligence and § 1983 claims ordinarily must have accrued on or before January 8, 2008.[3]

There is, however, a refinement to be considered in cases involving extant harm; under both state and federal law, the continuing violations doctrine permits the court to consider events that would otherwise be time-barred.  Carpinteria Valley Farms, Ltd. v. Cnty. of Santa Barbara, 344 F.3d 822, 829 (9th Cir. 2003) (discussing the continuing violations doctrine in the context of a § 1983 claim); BoardMaster Corp. v. Jackson Cnty., 224 Or.App. 533, 548-51, 198 P.3d 454 (2008) (addressing the continuing violations doctrine in regard to claims brought under the OTCA); see also Atwood v. Or. Dep't of Transp., 2008 WL 803020, *2 (D.Or. Mar. 20, 2008) ("the continuing violation doctrine under federal law appears perfectly congruous with the lines drawn between continuous torts and separate discrete acts under Oregon law").

A continuing tort is characterized by acts which "are not the

---

[3] Defendants argue that the statute of limitations precludes "all [of plaintiff's] state law claims against the State." Defs.' Mem. in Supp. of Mot. Summ. J. 2.  As discussed above, however, plaintiff's IIED and interference with business relations claims are based on events that took place sometime in 2009 and, as such, are timely under Or. Rev. Stat. § 30.275(9).

type of discrete, permanent events that would likely support separate actions" but, rather, separate incidents that "can be reasonably construed as elements of a systematic pattern of conduct [that caused plaintiff harm]." Griffin v. Tri-Met, 112 Or.App. 575, 581-82, 831 P.2d 42 (1992), aff'd in part and rev'd in part on other grounds, 318 Or. 500, 870 P.2d 808 (1994) (citation omitted); see also Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 113-14 (2002).

Here, plaintiff's negligence claim asserts that defendants neglected to follow Oregon law during their inquiry into the reported child abuse. See Am. Compl. ¶¶ 8-18. Likewise, plaintiff's § 1983 claim is predicated on defendants' failure to provide her with procedural due process, including the opportunity to be heard at a meaningful time and in a meaningful way prior to being deprived of her property interest in her child care business.[4] Id. at ¶¶ 24-28. Thus, these claims are both based on defendants' actions during the Investigation; the Investigation, however, began on December 18, 2007, and continued until January 17, 2008, when DHS issued a finding of child neglect.

As such, plaintiff's negligence and § 1983 claims are based on a systematic pattern of harm. See, e.g., Griffin, 112 Or.App. at

---

[4] Plaintiff was the owner and operator of this child care center; while the facility was certified solely in Mr. Martinez's name, plaintiff assisted in the management of the business, it was conducted out of her home, and her livelihood was contingent upon its success. Further, state-certification was essential to this business. Therefore, plaintiff possesses a property interest in the child care business. See Chalkboard, Inc. v. Brandt, 902 F.2d 1375, 1380 (9th Cir. 1989), cert. denied, 498 U.S. 980 (1990).

581-82 (actions placing "extraneous stress" on plaintiff in the work environment, such as reprimanding, threatening suspension and discharge, and demanding releases of information for medical records, constituted a continuing tort).    Indeed, summary suspension of Mr. Martinez's child center certification on the grounds of child abuse or neglect, and notification to the parents that plaintiff and her husband were no longer legally authorized to provide child care, was likely to have severe and permanent financial and reputational consequences regardless of the ultimate resolution of the charges; however, the finding of child neglect, and subsequent reversal of that decision, would not be independently actionable without allegations regarding the wrongfulness of the Investigation, which began on December 18, 2007 and extended into the relevant limitations period.

It should nonetheless be noted that this Court's analysis would likely remain unchanged even if events occurring on or before January 7, 2008 were barred by the statute of limitations.  This is because, "[w]hile time-barred acts may not be considered for purposes of liability, evidence of time-barred acts may be considered to prove timely claims."  Atwood, 2008 WL 803020 at *2. Thus, even construing the initiation of the Investigation and the finding of child neglect as distinct, independently actionable incidents, because the finding of child neglect occurred within two years of the commencement of this action, the untimely events would still be admissible as background evidence.

Therefore, defendants' motion is denied as to plaintiff's

negligence and § 1983 claims.

III. <u>Immunity</u>

As an initial matter, defendants assert that they are entitled to immunity based on a number of different theories; most of these immunities, however, are not applicable in the present case. For example, as discussed above, the State is not entitled to protection under the Eleventh Amendment because compliance with the OTCA expressly abrogates sovereign immunity for tort claims. <u>See</u> <u>Jensen</u>, 334 Or. at 416. Further, plaintiff's claims are not premised on any action taken by the anonymous source who reported the child neglect, or upon anything that was testified to at a hearing or in court, and, thus, the immunities for witnesses or for child abuse reporting are not implicated.

Accordingly, only executive officer immunity, qualified immunity, and discretionary immunity are material to this action.

A. <u>Executive Officer Immunity</u>

Executive officials may be entitled to absolute immunity for publishing defamatory material in the course of performing their official duties; this defense, however, is limited "to those exceptional situations where it is demonstrated that absolute immunity is essential for the conduct of public business." <u>Butz v.</u> <u>Economou</u>, 438 U.S. 478, 507 (1977); <u>see also</u> <u>Tennyson v. Children's</u> <u>Servs. Div.</u>, 308 Or. 80, 87-88, 775 P.2d 1365 (1989).

Absolute immunity depends upon the particular function performed by the official. <u>Butz</u>, 438 U.S. at 508. Thus, the question is not one of status, but of the "nature of the

responsibilities of the individual official." <u>Cleavinger v.</u> <u>Saxner</u>, 474 U.S. 193, 201 (1985). Nevertheless, the "prime categories of executive officials that are entitled to absolute immunity are those whose functions parallel the functions of judges and prosecutors." <u>Butz</u>, 438 U.S. at 511-15. The burden is on the official seeking immunity to show that the immunity is "justified by overriding considerations of public policy." <u>Forrester v.</u> <u>White</u>, 484 U.S. 219, 224 (1988).

Here, the entirety of defendants' executive immunity defense states that "[e]xecutive officers have absolute privilege to publish allegedly defamatory material in the courts of performing their official duties." Defs.' Mem. in Supp. of Mot. Summ. J. 7 (citing <u>Schroeder v. Poage</u>, 75 Or.App. 671, 707 P.2d 1240 (1985); and <u>Shearer v. Lambert</u>, 274 Or. 449, 547 P.2d 98 (1976)). Defendants fail to carry their burden in establishing their entitlement to this defense. Specifically, defendants neglected to adequately brief this issue or present any evidence in support of their defense. Thus, nothing in the record indicates that defendants were engaged in functions paralleling those of judges or prosecutors. Accordingly, there are no overriding considerations of public policy which justify the application of absolute executive immunity in the present dispute.

Moreover, investigating child abuse is not an "integral part of the judicial process," but instead akin to the investigative functions of police officers. <u>Tennyson</u>, 308 Or. at 88-89. As a result, DHS case workers are not entitled to absolute executive

immunity.   Mendive v. State, By and Through, Children's Servs. Div., 102 Or.App. 317, 320, 794 P.2d 807 (1990) (citing Tennyson, 308 Or. at 90).   For this additional reason, defendants are not entitled to executive officer immunity.

    B.   Qualified Immunity

    Qualified immunity shields government officials from civil liability "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."   Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982); Tennyson, 308 Or. at 87-89.   Plaintiff bears the initial burden of proving that the right was clearly established.   Romero v. Kitsap Cnty., 931 F.2d 624, 627 (9th Cir. 1991).   To be clearly established, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right."   Anderson v. Creighton, 483 U.S. 635, 640 (1987); Saucier v. Katz, 533 U.S. 194, 202 (2001).   Further, the right asserted must be "clearly established at the time of the challenged actions."   Mitchell v. Forsyth, 472 U.S. 511, 528 (1985).

    Once plaintiff establishes the deprivation of an existing federal constitutional or statutory right, however, the burden shifts to defendant to "prov[e] that his conduct was reasonable under the applicable standards even though it might have violated [plaintiff's] constitutional rights."   Houghton v. South, 965 F.2d 1532, 1534 (9th Cir. 1992) (citation and internal quotations omitted).   Finally, "denial of a defense motion for summary

judgment on qualified immunity merely leaves the issue for trial, and does not destroy the defense." Thompson v. Mahre, 110 F.3d 716, 720 (9th Cir.), cert. denied, 522 U.S. 967 (1997) (citation omitted).

The constitutional violation alleged in this case is the deprivation of property without due process of law. Because the owner and manager of a child care center has a clearly established property interest in a continued livelihood from that business, plaintiff demonstrated the deprivation of an existing federal constitutional right. Chalkboard, 902 F.2d at 1380 (child care certification from the state "constitutes an entitlement amounting to a property interest"); see also Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 542 (1985) (continued employment is a constitutionally protected property interest; the court noted that "[e]ven decisions finding no constitutional violation in termination procedures have relied on the existence of some pretermination opportunity to respond"); Bell v. Burson, 402 U.S. 535, 539 (1971) (business license, when clearly linked to a person's ability to earn a living, qualifies as a constitutionally protected property interest).

Accordingly, defendants had the burden of proving the reasonableness of their conduct. Defendants, however, failed to address this issue in their briefs. In fact, defendants' qualified immunity defense merely recites an abbreviated, and somewhat inaccurate, summary of plaintiff's allegations and then concludes that "the individually named caseworker defendants are entitled to

qualified immunity from [p]laintiff's § 1983 claim."[5]  Defs.' Mem.
in Supp. of Mot. Summ. J. 7.   Because there is insufficient
information to determine the validity of this defense, the Court
cannot hold that defendants met their burden.   Accordingly, this
Court cannot resolve whether the procedures provided were
constitutionally sufficient by employing the balancing test set
forth in Mathews v. Eldridge, 424 U.S. 319, 335 (1976).

Therefore, defendants are not entitled to qualified immunity
against plaintiff's § 1983 claim.   Defendants are nonetheless
granted leave to re-assert this defense at trial.

C.   Discretionary Immunity

The OTCA insulates public bodies or their employees, acting
within the scope of their employment or duties, from "[a]ny claim
based upon the performance of or the failure to exercise or perform
a discretionary function or duty, whether or not the discretion is
abused."  Or. Rev. Stat. § 30.265(6)(c).   Thus, the OTCA grants
absolute immunity for discretionary acts.  See Tennyson, 308 Or. at
89-90.

The mere exercise of judgment, however, is insufficient to
establish discretionary immunity under the OTCA.   Discretionary

---

[5] Defendants' assertions are especially difficult to
decipher because their analysis conflates distinct legal
theories.  For example, defendants cite to Tennyson for the
proposition that "Oregon child protection workers are entitled to
qualified immunity for investigation child abuse, taking children
into custody, and keeping parents from visiting their children."
Defs.' Mem. in Supp. of Mot. Summ. J. 6.   The court in Tennyson,
however, did not find that defendants were entitled to qualified
immunity as to plaintiff's § 1983 claim; rather, the court held
that defendants were immune from plaintiff's state law claims "to
the extent permitted by [the OTCA]."  Tennyson, 308 Or. at 89-90.

immunity applies only "to decisions involving the making of policy, but not to routine decisions made by employees in the course of their day-to-day activities, even when the decision involves a choice among two or more courses of action." Lowrimore v. Dimmit, 310 Or. 291, 296, 797 P.2d 1027 (1990). As such, "[t]o be immune under [Or. Rev. Stat. § 30.265(6)(c)], the decision must be a policy judgment by a person or body with government discretion" and not "the choice to follow or not follow a predetermined policy in the face of a particular set of facts." Mosley, 315 Or. at 89-92 (citations and internal quotations omitted).

Here, the record clearly establishes that defendants' actions did not involve the creation of a governmental policy. See, e.g., id. (surveying discretionary immunity cases). Moreover, while defendants did not brief this issue,[6] the record before the Court reveals that they did not exercise discretion as policy makers, but instead were merely effectuating pre-existing policies. See id.; see also McBride v. Magnuson, 282 Or. 433, 435-37, 578 P.2d 1259 (1978) (police officer's decision to investigate and report burns suffered by a child was not immune under the OTCA because the decision involved no more than "the determination of facts and simple cause-and-effect relationships"). Therefore, defendants are not entitled to discretionary immunity against plaintiff's Oregon tort claims.

_____

[6] The entirety of defendants' discretionary immunity defense consists of a citation to Tennyson. Defs.' Mem. in Supp. of Mot. Summ. J. 7.

**CONCLUSION**

Defendants' Motion for Summary Judgment (doc. 32) is GRANTED in part and DENIED in part as follows: GRANTED as to plaintiff's IIED and interference with business relations claims to the extent that these claims are premised on events that occurred on or before July 12, 2009; and DENIED in all other respects. Finally, the parties are strongly encouraged to pursue settlement of this matter in light of these proceedings; the parties should contact the Court if interested in a judicial settlement conference.

IT IS SO ORDERED.

Dated this 27th of August 2012.


_____/s/ Ann Aiken_____
Ann Aiken
United States District Judge