FILED06 NOV '12 13:27USDC-ORP

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

REGINA K. MARTINEZ,

Plaintiff,

v.

THE STATE OF OREGON, by and through its Department of Human Services and its Employment Department, MICHELLE GLENN, CLAUDIA WILCOX, and WENDY HILL,

Defendants.

Case No. 6:10-cv-06007-AA
OPINION AND ORDER

---

Mark R. Malco
Attorney at Law
P.O. Box 3
Seal Rock, Oregon 97376
Attorney for plaintiff

Ellen F. Rosenblum
Attorney General
John Clinton Geil
Senior Assistant Attorney General
Department of Justice
1515 S.W. Fifth Ave., Suite 410
Portland, Oregon 97201
Attorneys for defendants

AIKEN, Chief Judge:

Defendants the State of Oregon ("State"), by and through the Department of Human Services ("DHS") and the Child Care Division of the Oregon Employment Department ("CCD"), Michelle Glenn, Claudia Wilcox, and Wendy Hill move for reconsideration of this Court's disposition of their motion for summary judgment on plaintiff Regina Martinez's claims. See Fed. R. Civ. P. 59(e). For the reasons set forth below, defendants' motion is granted and this case is dismissed.

**BACKGROUND**

In 2007, plaintiff was certified by DHS as a foster parent. Plaintiff's husband, Victor Martinez,[1] also ran a day care facility out of their house in Ontario, Oregon, which was certified by both DHS and CCD. On October 30, 2007, DHS placed minor siblings AJ and BB in foster care at plaintiff's home. On December 15, 2007, plaintiff took AJ and BB out of state so that they could celebrate Christmas with their grandmother, who lived in a few miles away in Idaho. On December 16, 2007, an anonymous source called DHS and reported suspected child neglect because BB did not have his prescription medication and AJ had an eye infection.

On December 18, 2007, DHS assigned caseworker Glenn to investigate the reported neglect of AJ and BB (the "Investigation"). DHS immediately notified CCD that it had received a report of abuse or neglect involving plaintiff and her

[1] Mr. Martinez is not a party to this lawsuit.

husband; CCD suspended Mr. Martinez's child care center certification and ordered him to close the business by 5 p.m. on December 18, 2007. CCD further mandated that the child care business remain closed throughout the duration of the Investigation. In addition, CCD suspended plaintiff and Mr. Martinez from the Central Background Registry.[2]

On December 19, 2007, Glenn notified plaintiff that DHS had commenced an Investigation to determine whether plaintiff neglected to provide medical care for AJ and BB. Glenn did not specifically identify the medical care that was allegedly withheld or provide plaintiff with an opportunity to respond. That same day, DHS issued notices to the parents of the children who were receiving child care from plaintiff and her husband, which stated that they were no longer certified to operate a child care facility. The parents were instructed to remove their children from the facility as soon as possible and, moreover, that payments for child care provided by plaintiff or Mr. Martinez would not be approved by the State.

On January 17, 2008, DHS concluded the Investigation and issued a "Notice of Child Protective Services Founded Disposition," which was signed by Glenn and stipulated that reasonable cause existed to believe that plaintiff and her husband neglected the children in their care. On February 29, 2008, the State's review

[2] Enrollment in the Central Background Registry is a prerequisite to being employed in a child care program regulated by DHS.

committee reversed DHS's finding of child neglect. As a result, on April 7, 2008, the State lifted plaintiff's and Mr. Martinez's suspension from the Central Background Registry.

Thereafter, plaintiff and her husband relocated to Newport, Oregon, and again filed for child care certification with the State. On June 16, 2008, plaintiff sent a tort claim notice letter, in accordance with the Oregon Tort Claims Act ("OTCA"), to the State, outlining the above events as the basis for her claims. On November 12, 2008, DHS denied plaintiff's application for child care certification; she appealed this decision and an administrative hearing was held on July 13, 2009, at which Glenn testified. On December 20, 2009, an administrative law judge reversed DHS's decision and granted plaintiff a license to provide child care.

On January 8, 2010, plaintiff filed a complaint in this Court. On December 7, 2010, plaintiff filed an amended complaint, alleging: (1) negligence against the State; (2) deprivations of her First, Fifth, and Fourteenth Amendment due process rights in violation of 42 U.S.C. § 1983 against Glenn, Wilcox, and Hill; (3) intentional infliction of emotional distress ("IIED") against the State; and (4) interference with business relations and prospective advantage against the State.

On April 13, 2012, defendants filed a motion for summary judgment on all of plaintiff's claims. Defendants primarily argued that dismissal was appropriate because plaintiff's claims were time-barred under the OTCA's notice provision and the relevant

statutes of limitations. Defendants also argued briefly that they were immune from suit under a number of different theories, including qualified immunity, executive officer immunity, witness immunity, caseworker immunity, and child abuse and neglect reporting immunity.

On August 27, 2012, this Court issued an Opinion and Order ("Opinion") granting in part and denying in part defendants' motion. This Court held that plaintiff's IIED and interference with business relations claims were time-barred and therefore dismissed to the extent that they were based on events that took place on or before July 12, 2009; however, defendants' motion was denied as to its claims of immunity because there was "insufficient information" in defendants' briefs to determine the validity of these defenses. See Opinion at 13-18.

On September 18, 2012, defendants filed a motion for reconsideration of the Opinion. In their motion, defendants argue that this Court erred by: (1) not determining that the Eleventh Amendment bars plaintiff's state law claims asserted in federal court; and 2) holding that defendants did not have qualified immunity from plaintiff's § 1983 claim.

**STANDARDS**

Reconsideration under Rule 59(e) "should not be granted, absent highly unusual circumstances, unless the district court is presented with newly discovered evidence, committed clear error, or if there is an intervening change in the controlling law." McDowell v. Calderon, 197 F.3d 1253, 1255 (9th Cir. 1999) (en

banc), cert. denied, 529 U.S. 1082 (2000) (citation omitted).

Summary judgment is appropriate under Rule 56(a) if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show "that there is no genuine dispute as to any material fact and the [moving party] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Substantive law on an issue determines the materiality of a fact. T.W. Elec. Servs., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987). Whether the evidence is such that a reasonable jury could return a verdict for the nonmoving party determines the authenticity of the dispute. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The moving party has the burden of establishing the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). If the moving party shows the absence of a genuine issue of material fact, the nonmoving party must go beyond the pleadings and identify facts which show a genuine issue for trial. Id. at 324.

Special rules of construction apply when evaluating a summary judgment motion: (1) all reasonable doubts as to the existence of genuine issues of material fact should be resolved against the moving party; and (2) all inferences to be drawn from the underlying facts must be viewed in the light most favorable to the nonmoving party. T.W. Elec., 809 F.2d at 630.

**DISCUSSION**

A preliminary matter must be addressed before reaching the substantive merits of defendants' motion. Defendants assert that they are seeking reconsideration of two issues; however, these issues were not properly raised before this Court pursuant to defendants' motion for summary judgment.

For example, in their present motion, defendants argue that their conduct was reasonable such that they are entitled to qualified immunity and, for the first time, cite to statutes and administrative rules, as well as raise new facts, in support of their contention; however, their summary judgment motion was denied precisely because defendants failed to brief this issue. Compare Defs.' Mem. in Supp. of Mot. Reconsider 5-10, with Defs.' Mem. in Supp. of Mot. Summ. J. 6-7; see also Opinion at 16-17. In addition, defendants neither briefed the issue of sovereign immunity in their summary judgment motion nor raised it as an affirmative defense in their answer to plaintiff's complaint. In fact, the only mention of the Eleventh Amendment in any of defendants' briefs prior to the present motion was in a footnote; however, a court need not consider or address "substantive arguments raised only in a footnote." Rambus Inc. v. Hynix Semiconductor Inc., 569 F.Supp.2d 946, 985 (N.D.Cal 2008); see also Morales v. Woodford, 388 F.3d 1159, 1168 n.14 (9th Cir. 2004), cert. denied, 546 U.S. 935 (2005) (citing Int'l Olympic Comm. v. San Francisco Arts & Athletics, 781 F.2d 733, 739 (9th Cir. 1986)).

In sum, defendants, as the moving party, had the burden to

show that they were entitled to summary judgment. See Fed. R. Civ. P. 56(a). Because their briefing was deficient, defendants failed to meet their burden. Defendants concede this point, stating that they "fail[ed] to provide a more detailed analysis of the various defenses asserted." Defs.'s Mot. Reconsider 2 n.1. The present motion, however, does provide ample argument and evidence in support of defendants' sovereign and qualified immunity defenses. Nonetheless, because a motion to reconsider is an inappropriate vehicle to raise these issues for the first time, the Court construes the motion instead as a supplemental motion for summary judgment, especially in light of the nature of the defenses asserted. See e.g., Belinda K. v. Baldovinos, 2012 WL 3249481, *3 (N.D.Cal. Aug. 7, 2012) (denying a motion to reconsider where it was "based on facts and argument that could have been, but were not, raised during the summary judgment proceedings," citing Zimmerman v. City of Oakland, 255 F.3d 734, 740-41 (9th Cir. 2001), cert. denied, 543 U.S. 819 (2004)).

I. Sovereign Immunity

Defendants first assert that the State is entitled to immunity under the Eleventh Amendment against plaintiff's state law claims. Plaintiff contends that defendants waived this defense by not asserting it in their answer, motion for summary judgment, or summary judgment briefs. Plaintiff relies on Hill v. Blind Indus. & Servs. of Md., 179 F.3d 754 (9th Cir. 1999), and Johnson v. Rancho Santiago Cmty. Coll. Dist., 623 F.3d 1011 (9th Cir. 2010), cert. denied, 131 S.Ct. 2096 (2011), in support of her argument.

The cases that plaintiff cites to are discreet and therefore not binding. In Hill, the court held that defendant consented to the jurisdiction of the federal court because it "appear[ed] and actively litigat[ed] this case on the merits [and] did not assert a sovereign immunity defense until the first day of trial." Hill, 179 F.3d at 757-63. Relying on Hill, Johnson held that defendant waived immunity under the Eleventh Amendment because it "engaged in extensive proceedings in the district court without seeking dismissal on sovereign immunity grounds" and did not assert this defense until its appeal to the Ninth Circuit. Johnson, 623 F.3d at 1018, 1021-22. Unlike Hill and Johnson, neither a trial nor an appeal from a dispositive motion has occurred in this case. Further, beyond their initial summary judgment motion, defendants have not litigated this case on the merits. Thus, while plaintiff is correct that the State failed to properly raise this defense previously, they are unambiguously doing so now.

As such, the Court finds that defendants are entitled to sovereign immunity. The Eleventh Amendment bars suits against a state or its agencies "unless the state unequivocally consents to a waiver of immunity." Yakama Indian Nation v. Wash. Dep't of Revenue, 176 F.3d 1241, 1245 (9th Cir. 1999), cert. denied, 528 U.S. 1116 (2000) (citations omitted). "Although the State of Oregon has consented to be sued in Oregon courts for torts committed by its employees, officers, or agents while acting within the course and scope of their employment under the OTCA, it has not consented to be sued in federal court for those torts." Blair v.

Toran, 1999 WL 1270802, *23 (D.Or. Dec. 2, 1999), aff'd, 12 Fed.Appx. 604 (9th Cir. 2001).

Accordingly, because the State has not waived its sovereign immunity defense, defendants' motion is granted and plaintiff's negligence, IIED, and interference with business relations claims are dismissed.

II. Qualified Immunity

Defendants next argue that individual defendants Glenn, Wilcox, and Hill are entitled to qualified immunity on plaintiff's § 1983 claims because Oregon law authorizes suspension of a day-care license without a pre-deprivation hearing. Plaintiff contends that because there was no emergency, and because defendants failed to engage in the screening activities outlined in the Oregon Administrative Rules ("OAR"), such that a child protective services case should not have been opened, defendants acted unreasonably and therefore immunity is unavailable.

As discussed in the Opinion, qualified immunity shields government officials from civil liability "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982) (citations omitted). To determine whether a government actor is entitled to qualified immunity, the court determines, in no particular order, whether: (1) the alleged misconduct violated a right; and (2) that right was clearly established at the time of the alleged misconduct. Pearson v. Callahan, 555 U.S. 223, 236 (2009). In other words, if the

government actor reasonably believed that his or her conduct complies with the law, summary judgment based on qualified immunity is appropriate. Id. at 244; see also Anderson v. Creighton, 483 U.S. 635, 640 (1987).

The constitutional violation asserted in this case is the deprivation of property without due process of law[3]; notably, plaintiff contends that "Glenn, Wilcox and Hill[4] acted with the intent of preventing Plaintiff from having any opportunity to defend herself in any way prior to the destruction by them of plaintiff's business and profession." Am. Compl. ¶ 26. As noted in the Opinion, the Fourteenth Amendment's due process clause generally guarantees the right to be heard in a meaningful time and manner prior to the deprivation of property, such as continued employment or a business license. See Opinion at 16 (citing Chalkboard, Inc. v. Brandt, 902 F.2d 1375, 1380 (9th Cir. 1989), cert. denied, 498 U.S. 980 (1990); Cleveland Bd. of Educ. v.

---

[3] Plaintiff also alleges that defendants' actions violated her First Amendment right to free speech and her Fourteenth Amendment substantive due process rights. See Am. Compl. ¶¶ 23-28. Plaintiff, however, did not brief these matters; as such, the Court will not address them further.

[4] The Court is mindful of the fact that, in determining whether qualified immunity attaches, each defendant's act or omission must be analyzed individually to determine whether his or her specific conduct resulted in a deprivation of plaintiff's constitutional rights. See Leer v. Murphy, 844 F.2d 628, 633-34 (9th Cir. 1988). The parties, however, both address Glenn's, Wilcox's, and Hill's immunity collectively. This is likely because plaintiff's complaint does not make any specific allegations in regard to the individually named defendants; however, "[s]weeping conclusory allegations will not suffice to prevent summary judgment . . . [the plaintiff] must set forth specific facts as to each individual defendant's deliberate indifference." Id.

Loudermill, 470 U.S. 532, 542 (1985); and Bell v. Burson, 402 U.S. 535, 539 (1971)). Defendants neither argue that plaintiff's license to operate a state-sanctioned child-care business, or continued employment therein, fails to amount to a property interest nor that a deprivation did not occur.

Thus, the remaining question is whether the right allegedly violated was clearly established. In so determining, the dispositive inquiry "is whether it would be clear to a reasonable [government actor] that his conduct was unlawful in the situation he confronted." Saucier v. Katz, 533 U.S. 194, 202 (2001) (citations omitted), overruled on other grounds by Pearson, 555 U.S. at 236-37. The court looks to independent sources such as state law to define the dimensions of protected property interests and whether the conduct at issue was reasonable. See Soranno's Gasco, Inc. v. Morgan, 874 F.2d 1310, 1316-18 (9th Cir. 1989).

Under the Oregon statutes and administrative rules governing DHS's child protective services, defendants had a duty to "[c]ause an investigation to be made [and] [n]otify the Child Care Division" upon an anonymous report of child neglect in a child care facility. Or. Rev. Stat. § 419B.020(1); Or. Rev. Stat. § 419B.035(1)(f); OAR 413-015-0215(2). Upon receipt of such information, "CCD may immediately, and without prior hearing," suspend the child care license because "in the opinion of CCD, such action is necessary to protect children from physical or mental abuse or a substantial threat to health and safety . . . before an investigation is completed." OAR 414-350-0400(1); Or. Rev. Stat. § 657A.350; see

also OAR 414-061-0110(2) (authorizing suspension from the Central Background Registry, which is a prerequisite to child-care certification, in analogous circumstances); OAR 414-061-0110(1)(d) (authorizing suspension from the Central Background Registry when there is "an open child protective services" assessment).

The administrative rules do, however, contemplate a scenario in which a report of child abuse or neglect does not result in the initiation of a child protective services assessment. See OAR 413-015-0205 et seq. These screening rules require additional steps when the report of abuse is related to a licensed child care agency, including cross-reporting to CCD; regardless, in order for a child services assessment to be opened, the screening must reveal, as a threshold matter, that the activities reported meet the definition of child abuse set forth in Or. Rev. Stat. § 419B.005.[5] See OAR 413-015-0205(4)(I); OAR 413-015-0211; 413-015-0212(5), (6); OAR 413-015-0215(2), (3); see also OAR 413-015-0210(2), (4). It is precisely these administrative rules under which plaintiff's claim is alleged; namely, plaintiff contends that if defendants had followed these information gathering procedures, they would have concluded that no child abuse or neglect had occurred. As a result, a formal assessment by DHS would not have been commenced and CCD would not have suspended Mr. Martinez's

[5] Child abuse is defined, in relevant part, as: "[n]egligent treatment or maltreatment of a child, including but not limited to the failure to provide adequate food, clothing, shelter or medical care that is likely to endanger the health or welfare of the child [or] [t]hreatened harm to a child, which means subjecting a child to a substantial risk of harm to the child's health or welfare." Or. Rev. Stat. § 419B.005(1).

business license.

The Court agrees with plaintiff that the record indicates that, had defendants engaged in any sort of meaningful screening and information gathering, no child neglect would have been found pursuant to Or. Rev. Stat. § 419B.005. It is undisputed that the report of abuse was premised on three facts: (1) plaintiff took the foster children across state lines several days prior to a pre-approved scheduled visit with their grandmother, without first notifying DHS; (2) BB did not have his prescription medication; and (3) AJ had an eye infection. See Glenn Decl. ¶¶ 5-6.

Plaintiff provided evidence that, when an emergency arose such that she needed to drop the children off in Idaho a few days early, she notified the children's grandmother and Glenn, both of whom gave their consent. See Martinez Decl. ¶ 4; Malco Decl. Ex. 1, at 6-7; but see Glenn Decl. ¶ 4 (denying that plaintiff provided such notice to DHS). Plaintiff also testified that, when she dropped the children off and realized that she forgot BB's medication, she "offered to have [her] husband deliver it [that day], but the grandmother declined that offer, saying that she was going to Ontario anyway, and that she would pick it up [the following day]." Martinez Decl. ¶ 4; see also Pl.'s Resp. to Defs.'s Statement Facts ¶¶ 13-14. Moreover, plaintiff explained that she consulted a doctor to treat AJ's mild conjunctivitis, or pink eye, and "appropriately applied non-prescription eye-drops to soothe the irritation." Am. Compl. ¶ 8; Martinez Decl. ¶ 4; see also Geil Decl. Ex. 1, at 6, 16. She was informed, however, that no further

treatment was required and that the infection would resolve on its own; plaintiff also reported that AJ's eye infection was "invisible" earlier on December 16, 2007 and therefore must have "flared up" during his visit with his grandmother. Id.

Defendants have offered no evidence to refute plaintiff's sworn statements. In addition, defendants do not dispute that they failed to interview plaintiff, her husband, the foster children's doctors, or otherwise engage in any meaningful screening or investigatory activities. Nevertheless, defendants' apparent failure to engage in any initial information gathering does not change the fact that they were required to notify the CCD simply because a report of medical neglect arose out of plaintiff's child care facility. See Or. Rev. Stat. § 419B.020; OAR 413-015-0215(2).

Plaintiff alleges that defendants' initial disclosures to the CCD "grossly exaggerated any possible danger from Plaintiff to any child"; thus, plaintiff's complaint suggests that CCD's summary suspension of Mr. Martinez's business license was also based on defendants' failure to follow the relevant administrative rules. Am. Compl. ¶ 14. Plaintiff, however, failed to brief this issue and, further, has not proffered any evidence regarding the content of these statements.[6] Without more, the Court cannot conclude that

---

[6] The record reveals only that "[o]n December 17, 2007, in accordance with DHS Policy I-B 2.2.3 *Assessment of Abuse Allegations in Family Foster Care, Family Group Homes and Family Shelter Homes,* another DHS caseworker cross-reported to [CCD], due to its jurisdiction, in part, over placement of children in day child care." Glenn Decl. ¶ 9 (emphasis in original). In addition, the suspension notification states that, on "December 18, 2007, [CCD] received information from [DHS] that there is an open child protective services case involving the provider and

CCD's suspension of the certification at issue was impacted by the degree of the alleged abuse that defendants reported instead of a routine decision based on the mere fact that allegations arose involving circumstances that "'may have a detrimental effect on a child.'" Waddell Decl. Ex. 1, at 1 (quoting 414-350-0090(4)); see also Celotex, 477 U.S. at 323. Neither the CCD, nor any of its individual employees, are parties to this lawsuit; as such, their actions are immaterial to the issue of whether defendants are entitled to qualified immunity. Moreover, as defendants note for the first time in their supplemental brief, when CCD suspended Mr. Martinez's child care license, it provided "notice [to plaintiff and her husband that they] had a right to a post-deprivation contested case hearing if they disputed the suspension." Defs.' Mem. in Supp. of Mot. Reconsideration 5; see also Waddell Decl. Ex. 1, at 1-2. Post-deprivation hearings can be sufficient to protect a party's property interest: "either the necessity of quick action by the State or the impracticality of providing any meaningful predeprivation process, when coupled with the availability of [post-deprivation procedures], can satisfy the requirements of procedural due process." Parratt v. Taylor, 451 U.S. 527, 538-39 (1981), overruled on other grounds by Daniels v. Williams, 474 U.S. 327, 330-31 (1986); see also Gasco, 874 F.2d at 1318 ("[i]t is well-settled that protection of the public interest can justify an immediate seizure of property without a prior hearing").

---

his spouse Regina Martinez." Waddell Decl. Ex. 1, at 1.

It undisputed that neither plaintiff, as an interested party, nor Mr. Martinez, requested a post-deprivation contested case hearing. Regardless, defendants' authority to report allegations of abuse in state-certified child care facilities, and CCD's power to suspend the facility's license immediately based upon such reports, is necessitated by the State's undeniably strong interest in protecting children. As such, the Oregon legislature has determined that swift administrative action may be necessary in order to protect the welfare of children who receive care from these facilities; this Court is simply "not in a position to second-guess that legislative determination." Gasco, 874 F.2d at 1318. Accordingly, because plaintiff failed to establish that defendants' cross-reporting misrepresented the nature of the abuse allegations, this Court finds that a reasonable government actor could have concluded an immediate threat to the public health was present, regardless of whether a formal child protective services assessment was justified.

Further, because plaintiff does not address this issue in her briefs, there is no contention that the procedures themselves are inadequate or that it was feasible for the State to provide a predeprivation hearing. Rather, plaintiff merely argues that, under Chalkboard, a pre-deprivation hearing was required prior to the suspension of her license. As defendants note, however, Chalkboard is distinguishable from the present case. In Chalkboard, the state statutory scheme at issue required notice and a hearing prior to the deprivation of the child care license. See

Chalkboard, 902 F.2d at 1381-83. Here, unlike Chalkboard, Oregon law expressly authorizes the suspension of a child care license "immediately, and without prior hearing." OAR 414-350-0400(1); OAR 414-061-0110(2).

Thus, while defendants' actions may have been questionable, based on the record before the Court, they did not knowingly violate the law. While Glenn, Wilcox, and Hill were plainly required to disclose the report of child abuse to CCD, they were also required to engage in some form of information gathering before opening a formal child protective services assessment, which they failed to do. Based on the nature of the anonymous allegations asserted against plaintiff, it is difficult to see how suspension of her child care license was warranted; however, because the statutes and administrative rules at issue do not clearly mandate that some form of screening be performed prior to cross-reporting and, additionally, do not dictate the content of those communications, defendants' immediate disclosure to CCD of the allegation of child neglect was not unreasonable. See Caldwell v. LeFaver, 928 F.2d 331, 334 (9th Cir. 1991) (social workers' decision to remove children from their father's custody entitled to qualified immunity where the "action taken [had] at least some support in a state statute").

Further, what CCD did with that information once it was received is not actionable, especially in light of the post-deprivation process that was available, because plaintiff did not name any CCD employees as defendants in this case. Moreover,

because she neglected to brief the issue or submit any evidence regarding what Glenn knew or the content of Glenn's statements, plaintiff cannot overcome qualified immunity based on defendants' statements to CCD regarding the alleged abuse. Without such information, plaintiff cannot demonstrate that, even if wrongful, defendants' cross-reporting actions were deliberate as opposed to merely negligent. See Daniels, 474 U.S. at 330-31 (mere lack of due care by a state official does not deprive an individual of property under the Fourteenth Amendment).

Finally, plaintiff has not cited to, and the Court is not aware of, any cases discussing the reasonableness of a government actor's conduct in an analogous circumstance. Where, as here, there is a "lack of on-point precedent," the court is ordinarily "compel[led] . . . to grant qualified immunity" because any other outcome "would allow plaintiffs to convert the rule of qualified immunity into a rule of virtually unqualified liability simply by alleging violation of extremely abstract rights." Maxwell v. Cnty. of San Diego, 2012 WL 4017462, *5 (9th Cir. Sept. 13, 2012) (citations and internal quotations omitted); see also Baker v. Racansky, 887 F.2d 183, 189 (9th Cir. 1989) (right at issue was not clearly established where there was no precedent outlining when state officials could take child into temporary protective custody). Therefore, Glenn, Wilcox, and Hill are entitled to qualified immunity. Accordingly, plaintiff's § 1983 claim is dismissed.

**CONCLUSION**

Defendants' Motion for Reconsideration (doc. 51) (construed by this court as a supplemental summary judgment motion) is GRANTED. This case is DISMISSED.

IT IS SO ORDERED.

Dated this 5th of November 2012.

Ann Aiken
United States District Judge